UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

THOMAS DOWNS,                                    Case No. 2:22-cv-00801-GMN-DJA

                              Petitioner,              ORDER

        v.

WARDEN HUTCHINGS, *et al*.,

                              Respondents.

        This action is a pro se petition for a writ of habeas corpus brought by Thomas Downs, a prisoner incarcerated by the Nevada Department of Corrections.  The petition is before the court for resolution on its merits.  For reasons that follow, the petition is denied.

## I. PROCEDURAL BACKGROUND[1]

        In July 2019, Downs entered a guilty plea in the District Court for Clark County, Nevada, to one count of burglary, a violation of NRS 205.060, a category B felony.  Because an issue regarding Downs not receiving prescribed medication was raised at the plea hearing, the court conducted two status checks in August 2019.  In September 2019, Downs filed, through counsel, a motion for an order directing the Clark County Detention Center ("CCDC") to provide him with prescriptions he had been receiving up until the beginning of July.  The state district court held a hearing and denied the motion after finding that Downs was receiving treatment and noting that the court was not in a position to dictate what medication was best for Downs.

        After a hearing in November 2019, the state district court sentenced Downs as a habitual criminal to life with eligibility for parole after serving of ten years.  A judgment or conviction

---

[1] The information in this section is taken from the state court record filed at ECF Nos. 12 through 15 and this court's own docket.  For ease of reading, citations to the record are omitted in this section, but included as necessary to support of the court's analysis in Section III., below.

was entered in January 2020.  In March 2020, the court entered an amended judgment of conviction reflecting that Downs was sentenced pursuant to the large habitual criminal statute. Downs did not file a direct appeal.

In February 2021, Downs filed a pro se petition for post-conviction relief in the state district court.  After appointment of counsel, he filed a supplemental petition in April 2021.  In August 2021, the state district entered an order denying the petition that included the court's findings of fact and conclusions of law.  Downs appealed.  In March 2022, the Nevada Court of Appeals entered an order affirming the lower court's decision to deny relief.  That decision addresses the three claims for relief Downs presents in his federal habeas petition.

Downs initiated this federal habeas corpus proceeding in April 2022.  In August 2022, respondents filed an answer to Downs' petition for habeas relief.  Downs did not file a reply.

## II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA provides the following standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  "[A] federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

### III. DISCUSSION

#### A. Ground 1

In Ground 1, Downs claims that his guilty plea was not knowingly, intelligently, and voluntarily entered due to his lack of proper medication and impaired mental health. In support

3

of the claim, he alleges that his counsel, Fikisha Miller, informed the court during his plea canvass that he was not receiving prescribed medications due to a change of medical providers at the CCDC.  He further alleges that the court conducted an insufficient inquiry into whether the lack medication impacted his ability to understand the proceeding.  He contends that the entry of his plea should have been continued in the same way as his sentencing hearing to ensure he was capable of entering a valid guilty plea.

A criminal defendant may not plead guilty unless the plea is entered competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993).  The Court in *Godinez* held that the standard of competence to plead guilty required by the Due Process Clause is the same as the standard for standing trial established in *Dusky v. United States*, 362 U.S. 402 (1960) – i.e., whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and a rational as well as factual understanding of the proceedings against him. *Id*. at 396, 399.  Competence is the mental capacity or ability to understand the nature and object of the proceedings against him and to assist counsel. *Id*. at 401 n. 12, 402.

Due process requires a state court to hold a hearing where substantial evidence before the court indicates the need for further inquiry into the defendant's competence. *Drope v. Missouri*, 420 U.S. 162, 180 (1975).  Where the evidence before the trial court raises a bona fide doubt as to a defendant's competence to stand trial, a judge on his own motion must conduct an evidentiary competence hearing. *Pate v. Robinson*, 383 U.S. 375, 385 (1966).  The determination of whether further inquiry into competence is required depends upon the circumstances in each case. *Drope*, 420 U.S. at 180.

The Nevada Court of Appeals in Downs' post-conviction proceeding addressed the claim he now raises as Ground 1 as follows:

> Downs claimed he did not enter his guilty plea knowingly and voluntarily due to his impaired mental health and lack of proper medication.  Downs claimed his impaired mental health prevented him from understanding the charging document, the guilty plea agreement, and the consequences of his plea.  Downs failed to identify any facts that demonstrated he lacked "sufficient present ability

to consult with his lawyer with a reasonable degree of rational understanding [or] a rational as well as factual understanding of the proceedings against him." *See Melchor-Gloria v. State*, 99 Nev. 174, 180, 660 P.2d 109, 113 (1983) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)) (setting forth the test for competency).  Therefore, Downs failed to demonstrate his plea was not entered knowingly and voluntarily, and we conclude the district court did not err by denying this claim.

ECF No. 13-27 at 3-4.

A review of the state court record shows that this decision is entitled to deference under § 2254(d).  Before accepting his guilty plea, the state district court asked Downs if he was "currently under the influence of any drug, medication, or alcoholic beverage," which prompted defense counsel to request a bench conference. ECF No. 12-9 at 4.  During the bench conference, defense counsel Miller advised the court and the prosecutor that, due to a change of medical providers at CCDC, Downs had been cut off from receiving psychotropic drugs. *Id* at 5.  Miller also stated that, based on her recent visit with him, "he can get through the plea but he should be under medication." *Id*.  The court then confirmed with Downs that he was still comfortable proceeding with the plea hearing and that he understood what was happening. *Id*. at 6.  There is no indication in the transcript of the canvass that followed that Downs failed to understand the proceedings or the consequences of his plea. *Id*. at 6-11.

The record also indicates that, when he entered his guilty plea, Downs had not been completely cut off from receiving medication, but instead had only been taken off only one (Trazadone) of multiple prescriptions because it was contraindicated by another (Zoloft). ECF No. ECF No. 15-2 at 3-4; ECF No. 12-17 at 13.  In addition, documents were provided to the state district judge under seal noting instances of Downs refusing medication. ECF No. 13-12 at 12.  And, finally, the state district judge observed signs of Downs' mental decompensation *after* the entry of his plea not before, which explains why Downs' sentencing was delayed notwithstanding the court's acceptance of his guilty plea. *Id*.; ECF No. 12-17 at 6, 10, 14.

In sum, Downs has not presented any credible evidence to support a finding that he lacked the competence to enter a guilty plea or that the trial court was obligated to conduct further inquiry into his competence.  Accordingly, he has not established that the state court's

adjudication of the claim in Ground 1 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or in a decision that was based on an unreasonable determination of the facts.  Ground 1 is denied.

### B.  Ground 2

In Ground 2, Downs alleges that he was deprived of effective assistance of counsel in violation of the Sixth and Fourteenth Amendment because counsel failed to raise his competency and proper medication as an issue before the entry of his guilty plea.  To establish a claim of ineffective assistance of counsel (IAC), a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id*. at 687-88.  Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  If the conviction was the result of a guilty plea, a petitioner shows prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Having cited to the *Strickland/Hill* standard, the Nevada Court of Appeals in Downs' post-conviction proceeding addressed the IAC claim he now raises as Ground 2 as follows:

> Downs claimed counsel was ineffective for failing to file a motion addressing the medication issue prior to the entry of his plea.  Downs claimed counsel should have insisted on a competency evaluation or otherwise objected to the proceeding until the medication issue was resolved.  During the plea canvass, counsel informed the court she had met with Downs and asserted that he was able to get through the proceeding despite his lack of medication.  Downs expressed his desire to proceed with the plea despite his lack of medication and asserted that he understood the charging document, the guilty plea agreement, and the consequences of his plea.  Moreover, Downs failed to allege specific facts that would have caused counsel to question his competency or what the results of any such evaluation would have been.  Accordingly, Downs failed to demonstrate his counsel's performance fell below an objective standard of reasonableness or a reasonable probability he would have refused to plead guilty and would have

1
2
      insisted on proceeding to trial had counsel filed the motion prior to the entry of his plea.  Therefore, we conclude the district court did not err by denying this claim.

3
ECF No. 13-27 at 4-5.

4
      This decision is also well-supported by the state court record.  Shortly after his arrest in

5
March 2019, Downs submitted a request to the CCDC for medication he had been prescribed

6
prior to his incarceration. ECF No. 15-2 at 14.  In response, a psychiatric nurse practitioner,

7
Alexa Carrozza, evaluated Downs and diagnosed him with depression, unspecified mood

8
disorder, and methamphetamine use disorder. ECF No. 15-2 at 16-30.  Carrozza's evaluation is

9
otherwise unremarkable and contains nothing to suggest that Downs might not be competent to

10
enter a guilty plea. *Id.*

11
      On the day Downs entered his guilty plea, Miller certified in writing that, to the best of

12
her knowledge, Downs was "competent and underst[ood] the charges and the consequences of

13
pleading guilty." ECF No. 12-10 at 8.  Her representation to the court at the plea hearing that

14
Downs should be on medication reflects her opinion as to Downs' mental health, but does not

15
show that there was reason for her to question his competence to enter a guilty plea.  Similarly,

16
when she filed a motion several weeks later for the CCDC to provide Downs with medication,

17
Miller's stated concern was not Downs' competence, but that fact that, by that time, he was

18
"severely depressed and suffering from insomnia and anxiety." ECF No. 15-2 at 4.  In addition,

19
the motion was prompted, in significant part, by events that occurred after Downs had entered

20
his plea. *Id.*

21
      Here again, Downs' claim has not been substantiated with credible evidence.  Without

22
evidence that Miller had reason to question his competence, Downs has not demonstrated that

23
Miller performed below constitutional standards by not raising it as an issue prior to the entry of

24
his guilty plea.  Likewise, with no evidence that he may have, in fact, been found incompetent

25
when entered his guilty plea, Downs has not demonstrated that, but for Miller's omission, he

26
would have not entered his guilty plea.  Accordingly, Down has not established that the state

27
court's adjudication of the claim in Ground 2 resulted in a decision that was contrary to, or

28

1   involved an unreasonable application of, clearly established federal law or in a decision that was

2   based on an unreasonable determination of the facts.  Ground 2 is denied.

3                                             C.  Ground 3

4          In Ground 3, Downs alleges that he received ineffective assistance of counsel in violation

5   of his constitutional rights because counsel failed to file a direct appeal.  He contends that he

6   could have challenged his habitual criminal adjudication and life sentence had counsel not

7   erroneously advised him that a direct appeal was unavailable because he was convicted pursuant

8   to a plea agreement.

9          An attorney renders ineffective assistance by failing to perfect an appeal despite an

10  obligation to do so. *Roe v. Flores–Ortega*, 528 U.S. 470, 477–81 (2000).  The Court in *Flores–*

11  *Ortega* held that such an obligation arises when (1) the defendant instructs counsel to appeal or

12  (2) counsel neglects to consult with the defendant about appealing even though a rational

13  defendant would want to appeal or the defendant reasonably demonstrated an interest in

14  appealing. *Id*. at 477–80.  "[A] highly relevant factor in this inquiry will be whether the

15  conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of

16  potentially appealable issues and because such a plea may indicate that the defendant seeks an

17  end to judicial proceedings." *Id*. at 480.  When a defendant who pleaded guilty claims that he

18  was deprived of the right to appeal, "the court must consider such factors as whether the

19  defendant received the sentence bargained for as part of the plea and whether the plea expressly

20  reserved or waived some or all appeal rights." *Id*.  Finally, to show prejudice "a defendant must

21  demonstrate that there is a reasonable probability that, but for counsel's deficient failure to

22  consult with him about an appeal, he would have timely appealed."

23         The Nevada Court of Appeals in Downs' post-conviction proceeding addressed the claim

24  he now raises as Ground 3 as follows:

25              Downs also claimed counsel was ineffective for erroneously advising him
            he could not appeal because he took a plea bargain and for failing to challenge his
26          sentence on direct appeal.  Downs waived his right to appeal in his guilty plea
            agreement.  Moreover, Downs received a sentence consistent with the range of
27          punishment he bargained for and did not seek presentence relief from his plea.

28

Therefore, Downs failed to demonstrate counsel's actions were objectively unreasonable. *See Burns v. State*, 137 Nev., Adv. Op. 50, 495 P.3d 1091, 1100 (2021) (providing a defendant may prospectively waive the right to appellate review); *Toston v. State*, 127 Nev. 971, 979-80, 267 P.3d 795, 801 (2011) (providing circumstances where counsel may infer a client's desire to appeal in case where client pleaded guilty). Therefore, we conclude the district court did not err by denying this claim.

ECF No. 13-27 at 5.

Here again, the state court's decision is entitled to deference under § 2254(d). The Nevada Court of Appeals applied state case law in a manner consistent with *Strickland* and *Flores-Ortega*.[2] Downs received a sentence within the limits outlined in his plea agreement. ECF No. 12-10 at 2-3. In addition, the plea agreement included notice that, by entering a guilty plea, he was waiving his right to appeal his conviction but retaining the right to pursue post-conviction relief. *Id*. at 5-6. While he alleges that counsel gave him erroneous information about his appeal rights, Downs makes no claim that he demonstrated to counsel any interest in filing an appeal. And, while he claims that he could have challenged his habitual criminal adjudication and life sentence, he does not identify any nonfrivolous grounds for reversal.[3]

For the foregoing reasons, Downs has not shown that he received ineffective assistance of counsel based on counsel's failure to consult with him about an appeal or file an appeal. Thus, the Nevada Court of Appeals' ruling was not contrary to, or an unreasonable application of, *Strickland* or *Flores-Ortega*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. Ground 3 is denied.

### IV. CONCLUSION

For the reasons set forth above, Downs is not entitled to habeas relief.

\ \ \

\ \ \

---

[2] The Nevada Supreme Court in *Toston* relied on *Strickland* and *Flores-Ortega* to explain the applicable standards. *See Toston*, 267 P.3d at 799-801.

[3] Downs had at least 20 prior felony convictions when he entered his guilty plea in this case. ECF No. 12-21 at 4-9; ECF No. 15-1 at 6-11. He received the middle of three possible sentences in terms of severity and the shortest possible term before parole eligibility. *See* Nev. Rev. Stat. § 207.010(1)(b).

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Downs' petition, this court declines to issue a COA for its resolution of any procedural issues or any of Downs' habeas claims.

**IT IS THEREFORE ORDERED** that Downs' petition for a writ of habeas corpus (ECF No. 6) is DENIED.  The Clerk shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

**IT IS FURTHER ORDERED** that respondents' motion for leave to file exhibits under seal (ECF No. 14) is granted *nunc pro tunc* as of August 31, 2022.

DATED: March 29, 2023

_____

U.S. District Judge Gloria M. Navarro